[Cite as *Toney v. Dayton*, 2017-Ohio-5618.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| TERRY TONEY, et al. | : | |
| | : | |
| *Plaintiffs-Appellants* | : | Appellate Case No. 27245 |
| | : | |
| v. | : | Trial Court Case Nos. 2014-CV-1713, |
| | : | 2014-CV-3292 & 2014-CV-3294 |
| CITY OF DAYTON, et al. | : | |
| | : | (Civil Appeal from |
| *Defendants-Appellees* | : | Common Pleas Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2017.

. . . . . . . . . .

JOSHUA A. ENGEL, Atty. Reg. No. 0075769, 5181 Natorp Boulevard, Suite 210, Mason, Ohio 45040

MICHAEL K. ALLEN, Atty. Reg. No. 0025214, 810 Sycamore Street, 5th Floor, Cincinnati, Ohio 45202

PAUL M. DEMARCO, Atty. Reg. No. 0041153, 119 East Court Street, Suite 530, Cincinnati, Ohio 45202

THOMAS J. MANNING, Atty. Reg. No. 0059759, P.O. Box 751484, Dayton, Ohio 45475
      Attorneys for Plaintiffs-Appellants

JOHN C. MUSTO, Atty. Reg. No. 0071512, 101 West Third Street, Dayton, Ohio 45402

DAWN M. FRICK, Atty. Reg. No. 0069068, DAVID M. SHAVER, Atty. Reg. No. 0085101, JEFFREY C. TURNER, Atty. Reg. No. 0063154, EDWARD J. DOWD, Atty. Reg. No. 0018681, CHRISTOPHER T. HERMAN, Atty. Reg. No. 0076894, 8163 Old Yankee

Street, Suite C, Centerville, Ohio 45458

LORI E. DENLINGER, Atty. Reg. No. 0053384, 7501 Paragon Road, Dayton, Ohio 45459

QUINTON F. LINDSMITH, Atty. Reg. No. 0018327, JAMES P. SCHUCK, Atty. Reg. No. 0072356, 100 South Third Street, Columbus, Ohio 43215

STEPHEN C. MCHUGH, Atty. Reg. No. 0018788, 33 West First Street, Suite 600, Dayton, Ohio 45402
        Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiffs-appellants, Ghassan Deek, Eusebio H. Faura, Teresa K. Griffith, Thomas A. Griffith, Scott Howard, Darlene Lucas, Dean Lucas, Joe Meyer, Stacy Toney, Terry Toney, Austin Troxell and Charles Grant Vandervort, appeal from the decision of the Montgomery County Court of Common Pleas in their civil actions contesting notices of civil liability issued under Dayton, Trotwood and West Carrollton municipal ordinances implementing automated traffic enforcement systems. In its decision, the trial court overruled Appellants' motions for summary judgment and class certification, and sustained the competing motions for summary judgment and judgment on the pleadings of Defendants-appellees, the City of Dayton; Chief Richard S. Biehl of the Dayton Police Department; the City of Trotwood; Quincy E. Pope, Sr., Public Safety Director and Deputy City Manager for the City of Trotwood; the City of West Carrollton; Chief Doug Woodard of the West Carrollton Police Department; and RedFlex Traffic Systems, Inc. Appellants argue that the trial court erred when it determined that the cities' automated traffic enforcement ordinances are not facially unconstitutional pursuant to Article I, Section 16, Ohio Constitution. We concur with the trial court's determination. Therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} The ordinances at issue (collectively, the "Ordinances")—Revised Code of General Ordinances of the City of Dayton, Ohio [*hereinafter* R.C.G.O.] 70.121; City of Trotwood Code of Ordinances [*hereinafter* TCO] 313.11 and 333.09; and Codified Ordinances of West Carrollton, Ohio [*hereinafter* WCCO] 72.130—implement automated traffic enforcement systems. Under the Ordinances, automatic camera stations are installed at selected locations to detect red-light and speed-limit violations. When a vehicle is photographed in the midst of a violation, a notice of civil liability is mailed to the owner of the vehicle. The owner may then pay the monetary penalty or request an administrative hearing to contest the notice.

{¶ 3} Appellants Ghassan Deek, Teresa Griffith, Thomas Griffith, Stacy Toney, Terry Toney and Charles Vandervort commenced Case No. 2014 CV 01713 in the Montgomery County Court of Common Pleas on March 25, 2014.[1] With the exception of Thomas Griffith and Stacy Toney, all of them received at least one notice of civil liability from the City of Dayton. None of the recipients requested an administrative hearing.

{¶ 4} Appellants Scott Howard, Joe Meyer and Austin Troxell commenced Case No. 2014 CV 03292 in the Montgomery County Court of Common Pleas on June 4, 2014. All of them received at least one notice of civil liability from the City of West Carrollton. Mr. Howard received two notices and did not request an administrative hearing in

---

[1] Originally, Aaron Berger and Alicia Berger were among the plaintiffs. The two voluntarily dismissed all of their claims without prejudice in a notice of dismissal filed on August 12, 2014. The trial court refers to the Bergers in passing in the decision on appeal, and in their brief, Appellees likewise mention the Bergers in their recitation of the facts. Nevertheless, in the absence of any counterclaims or cross-claims against them, the Bergers would not seem to be parties to this appeal given that they voluntarily dismissed their claims prior to the trial court's entry of judgment.

response to either of them. Mr. Meyer received three notices and requested a hearing in response to one. Mr. Troxell received two notices and requested a hearing in each instance.

{¶ 5} Appellants Scott Howard, Darlene Lucas and Dean Lucas commenced Case No. 2014 CV 03494 on June 4, 2014, though they subsequently filed an amended complaint to join Appellant Eusebio Faura as an additional plaintiff.[2] Messrs. Faura and Howard each received a notice of civil liability from the City of Trotwood, and neither requested an administrative hearing in response. Darlene Lucas and Dean Lucas did not receive notices from the City of Trotwood.

{¶ 6} In a series of orders entered on July 29 and July 30, 2014, the trial court consolidated the three cases. The complaint in each case consists of essentially the same four causes of action. Count I is a cause of action for declaratory judgment concerning the jurisdiction of the administrative tribunals established by the Ordinances. Count II, also a cause of action for declaratory judgment, concerns the constitutional validity of the Ordinances pursuant to the due process clause of the Ohio Constitution. Count III is a request for injunctive relief, and Count IV is a claim of unjust enrichment. At Appellants' request, and without opposition, the trial court dismissed Count I in all three cases on March 1, 2016.[3]

---

[2] Appellant Scott Howard appeared as a plaintiff in Case No. 2014 CV 03292 and in Case No. 2014 CV 03294. In the former, he avers that he is a resident of the City of West Carrollton residing at "1001 Primrose Drive, West Carrollton, Ohio 45449," and in the latter, he avers that he is a resident of the City of Trotwood residing at "1001 Primrose Drive, Trotwood, Ohio 45449."

[3] The trial court had stayed the cases on August 22, 2014, finding that forthcoming opinions from the Ohio Supreme Court were likely to have a direct bearing. In its entry of March 1, 2016, it lifted the stay and dismissed Count I of Appellants' complaints in the

**{¶ 7}** On August 8, 2016, the trial court entered a final decision in the consolidated cases, resolving a number of dispositive motions. In Case No. 2014 CV 01713, the court:

    a.    overruled the plaintiffs' motion for summary judgment;

    b.    overruled the plaintiffs' motion for class certification;

    c.    sustained the motion of Defendants, the City of Dayton and Chief Richard Biehl, for summary judgment; and

    d.    sustained the motion of Defendant, RedFlex Traffic Systems, Inc., for summary judgment.

In Case No. 2014 CV 03292, the court:

    a.    overruled the plaintiffs' motion for judgment on the pleadings;

    b.    overruled the plaintiffs' motion for class certification;

    c.    sustained the motion of Defendants, the City of West Carrollton and Chief Doug Woodard, for summary judgment; and

    d.    sustained the motion of Defendant, RedFlex Traffic Systems, Inc., for summary judgment.

And in Case No. 2014 CV 03294, the court:

    a.    overruled the plaintiffs' motion for judgment on the pleadings;

    b.    overruled the plaintiffs' motion for class certification;

    c.    sustained the motion of Defendants, the City of Trotwood and

---

wake of the Ohio Supreme Court's opinions in *Walker v. City of Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, and *Jodka v. City of Cleveland*, 143 Ohio St.3d 50, 2015-Ohio-860, 34 N.E.3d 99.

Quincy Pope, Sr. for judgment on the pleadings; and

d. sustained the motion of Defendant, RedFlex Traffic Systems, Inc., for summary judgment.

## II. **Appellants' First Assignment of Error**

{¶ 8} For the first of their two assignments of error, Appellants contend that:

THE TRIAL COURT INCORRECTLY CONCLUDED THAT THE AUTOMATIC TRAFFIC ENFORCEMENT SYSTEMS DID NOT VIOLATE THE DUE COURSE OF LAW PROVISIONS OF THE OHIO CONSTITUTION.

{¶ 9} Appellants raise a facial challenge to the Ordinances, arguing that they violate the Ohio Constitution because they fail to provide sufficient procedural due process guarantees. A facial constitutional challenge posits that "a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose," a high standard made all the more difficult to meet because it requires "proof beyond a reasonable doubt." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21, citing *Jaylin Invs., Inc. v. Vill. of Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, ¶ 11; *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Educ.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21. Reference "to extrinsic facts is not required to resolve a facial challenge," and when evaluating an ordinance by this standard, a court should not "speculate about 'hypothetical' or 'imaginary' cases." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-450, 128 S.Ct. 1184, 170 L.Ed. 2d 151 (2008), citing *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 4

L.Ed.2d 524 (1960); *Wymsylo*, 2012-Ohio-2187, ¶ 21, citing *Washington State Grange*, 552 U.S. at 450, and *City of Reading v. Pub. Util. Comm'n*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840, ¶ 15.

{¶ 10} All "legislation, including municipal ordinances, [is] entitled to a strong presumption of constitutionality." (Citation omitted.) *Cleveland Taxpayers for Ohio Constitution v. City of Cleveland*, 8th Dist. Cuyahoga No. 94327, 2010-Ohio-4685, ¶ 7. As a result, courts should "liberally construe [a challenged ordinance] in order to save it from constitutional infirmities." *Id.*, citing *City of Lebanon v. McClure*, 44 Ohio App.3d 114, 116, 541 N.E.2d 1073 (12th Dist.1988). If, by " 'any fair course of reasoning, the [ordinance] and the constitution can be reconciled, [then] the [ordinance] must stand.' " *Id.*, quoting *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 9.

{¶ 11} Article I, Section 16 of the Ohio Constitution states, in relevant part, that persons who suffer physical harm or harm to their "land[s], goods, * * * or reputation[s], shall have remedy by due course of law"; this is "the equivalent of the Due Process Clause of the United States Constitution." *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 69. The "fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In reviewing an ordinance "on due-process grounds, [a court should] apply a rational-basis test unless the statute restricts the exercise of fundamental rights." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 49, citing

*Sorrell v. Thevenir*, 69 Ohio St.3d 415, 423, 633 N.E.2d 504 (1994), and *Morris v. Savoy*, 61 Ohio St.3d 684, 688-689, 576 N.E.2d 765 (1991). An ordinance is constitutionally valid under this test if it bears " 'a real and substantial relation to the * * * health, safety, morals or general welfare of the public' " and is " 'not unreasonable or arbitrary.' " *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 274, 503 N.E.2d 717 (1986), quoting *Benjamin v. City of Columbus*, 167 Ohio St. 103, 146 N.E.2d 854 (1957), paragraph five of the syllabus.

{¶ 12} Unlike " 'some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews*, 424 U.S. at 334, quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Instead, due process is a " 'flexible [concept] and calls for such procedural protection as [a given] situation demands.' " *Id.*, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Identification of the precise requirements of procedural due process for a specific set of circumstances generally requires consideration of the following three factors:

> First, the private interest that will be affected by * * * official action; second, the risk of an erroneous deprivation of [that private] interest through the [official] procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail.

(Citation omitted.) *Id.* at 335; *see also Shirokey v. Marth*, 63 Ohio St.3d 113, 120, 585 N.E.2d 407 (1992), citing *Mathews*, 424 U.S. at 335. Simply put, "[t]he less that is at

stake, other things being equal, the less process is due."   *Van Harken v. City of Chicago*, 103 F.3d 1346, 1353 (7th Cir.1997).   When the " 'interest is purely economic, the [Ohio] constitution demands only * * * a meaningful opportunity to be heard.' "   *See Shirokey*, 63 Ohio St.3d at 120, quoting *1946 St. Clair Corp. v. City of Cleveland*, 49 Ohio St.3d 33, 36, 550 N.E.2d 456 (1990).

### A. The Ordinances

{¶ 13} Appellants direct their challenges at the Ordinances' provisions on administrative hearings, arguing that they suffer from four putative constitutional shortcomings: use of hearsay testimony in the absence of discovery and subpoena power; limitations on affirmative defenses; abrogation of spousal privilege; and the bond requirements.   Elaborating on their first argument, Appellants acknowledge that the "Ohio Supreme Court has held that administrative agencies are not bound by the rules of evidence applied in court."   *City of Cleveland v. Posner*, 193 Ohio App.3d 211, 2011-Ohio-1370, 951 N.E.2d 476, ¶ 27, citing *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44, 430 N.E.2d 468 (1982).   Discovery "is typically not available," and an administrative tribunal may admit any reliable, probative and substantial evidence, including hearsay.[4]   *Kuczak v. City of Trotwood Police Dep't*, S.D.Ohio No. 3:13-cv-101, 2016 WL 4987170, *6 (Sept. 15, 2016); *Posner*, 2011-Ohio-1370, ¶ 27.   Moreover,

---

[4] Reliable evidence " 'is dependable,' " meaning that " 'it can be confidently trusted.' " *Posner*, 2011-Ohio-1370, ¶ 27, quoting *Our Place, Inc. v. Ohio Liquor Control Comm'n*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992).   To be deemed reliable, " 'there must be a reasonable probability that the evidence is true.' "   *Id.*, quoting *Our Place*, 63 Ohio St.3d at 571.   Probative evidence " 'is evidence that tends to prove the issue in question' " and " 'must be relevant in determining the issue.' "   *Id.*, quoting *Our Place*, 63 Ohio St.3d at 571.   Substantial evidence has " 'some weight' " or, in other words, " 'must have importance and value.' "   *Id.*, quoting *Our Place*, 63 Ohio St.3d at 571.

because "there is no constitutional right to confront witnesses in civil proceedings," the availability of subpoenas in administrative actions is not constitutionally mandated. *See Kuczak*, 2016 WL 4987170, *13, citing *Hannah v. Larche*, 363 U.S. 420, 440, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), fn. 16. Recognizing these principles, Appellants contend nevertheless that where an administrative tribunal "rel[ies] on hearsay evidence and [at the same time does] not provide any opportunity for the [defendant] to compel the attendance of the declarant[]," the defendant has been deprived of procedural due process rights because the defendant has had no chance to attack "the veracity of the hearsay statements." (Emphasis added.) Appellants' Br. 17.

{¶ 14} Regarding affirmative defenses, Appellants argue that limitations imposed on the supporting evidence that may be introduced are unreasonably restrictive. They also argue that the burden of proof required of some defendants may result in the abrogation of spousal privilege inasmuch as R.C.G.O. 70.121(C)(2), TCO 313.11(c)(3)(A) and 333.09(c)(3)(A), and WCCO 72.130(C)(4)(a) allow the owner of a vehicle to avoid civil liability for a violation committed by another person by providing the name and address of the person driving the vehicle at the time of the alleged violation. Regarding the bond requirement, Appellants argue that the Ordinances effectively deny indigent defendants the remedy of an administrative hearing.

### 1. R.C.G.O. 70.121

{¶ 15} The first of the *Mathews* factors is "the private interest that will be affected by the official action." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) Under the City of Dayton's ordinance, the civil penalty assessed "may not exceed $250.00 per violation," but violators who fail to remit timely payment of the penalty

must also pay a late fee of $25.00.[5]   R.C.G.O. 70.121(F)(2) and (4).   The private interest under the Dayton ordinance, then, is a maximum of $275.00.   Although this amount would doubtless be a significant expense for the average motorist, it is comparatively insubstantial with respect to the overall cost of owning and operating a vehicle.

{¶ 16} The second factor is "the risk of an erroneous deprivation of [the] private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."   *Mathews*, 424 U.S. at 335.   Dayton's ordinance establishes that an alleged violator must receive a notice of liability, has the right to an administrative hearing, and at the hearing, may introduce at least some evidence in support of a defense.   R.C.G.O. 70.121(C)(3)-(4), (D), (E)(1)(c) and (E)(2).   Under R.C.G.O. 70.121(E)(2), which sets forth a list of "affirmative defense[s]," the owner—or driver—of a vehicle can avoid liability by showing that commission of the violation was necessary "in order to yield the right-of-way to an emergency vehicle * * * or to a funeral procession"; that the vehicle "or [its] registration plates were stolen before the violation occurred"; that "at the time and place of the alleged violation, the traffic control signal or speed sensor," as applicable, "were not operating properly"; or that the driver of the vehicle at the time was not the person named in the notice.   To "demonstrate that the * * * vehicle or [its] registration plates were stolen before the violation occurred," the owner of the vehicle "must submit proof that a [corresponding] police report * * * was filed prior to the violation or within 48 hours after the violation occurred."   R.C.G.O. 70.121(E)(2)(b). Similarly, when an owner receives a notice of liability and wishes to defend on the grounds

---

[5] The ordinance does not set a minimum penalty or indicate how, in each case, the amount of the penalty should be determined.

that another person was driving the vehicle, the owner must indicate, "at a minimum, the [actual] operator's name and current address, and any other evidence [deemed necessary] by the [h]earing [o]fficer." R.C.G.O. 70.121(E)(2)(d). The owner of a vehicle is, however, ultimately "responsible for a violation * * *, except when the owner can provide evidence that the vehicle was in the care, custody, and control of another person at the time of the violation." R.C.G.O. 70.121(C)(1).

{¶ 17} Notwithstanding that these procedures fall short of the due process accorded a defendant in a civil trial, they suffice to minimize the risk of penalizing the wrong party. Procedural "due process rules are meant to protect persons not from [any] deprivation, but [only] from the mistaken or unjustified deprivation of life, liberty, or property." (Emphasis added.) *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Dayton's ordinance accounts for the most likely scenarios in which a person identified in a notice of liability is not responsible for the violation alleged— authorized or permissive use of the vehicle by another person, theft of the vehicle or its license plates, or malfunctioning of the automatic enforcement equipment. Furthermore, despite the limitations imposed on the evidence that a defendant may introduce at an administrative hearing, the defendant still has a reasonable opportunity to demonstrate that another person was responsible for the violation; regarding defenses of this kind, we conclude that additional or substitute procedural safeguards would likely have little value.

{¶ 18} By contrast, a defendant mounting a defense based upon a fault in the automatic enforcement equipment encounters significant obstacles, the inability to submit discovery requests or issue subpoenas to the person or persons responsible for

monitoring and maintaining the equipment.[6]  Even so, these obstacles do not of themselves rise to the level of constitutional infirmities because a defendant has no constitutional right to confront witnesses in civil proceedings.  *Kuczak v. City of Trotwood Police Dep't*, S.D.Ohio No. 3:13-cv-101, 2016 WL 4987170, *13 (Sept. 15, 2016).  The ordinance, for that matter, does not on its face prohibit defendants from engaging their own expert witnesses to testify regarding the equipment's accuracy.  And because administrative hearings held pursuant to R.C.G.O. 70.121 qualify as quasi-judicial proceedings, a defendant can overcome these obstacles through an administrative appeal under R.C. Chapter 2506.[7]  *City of Cleveland v. Cord*, 8th Dist. Cuyahoga No. 96312, 2011-Ohio-4262, ¶ 13 (commenting that "so long as [a defendant in an administrative hearing] is presented with an opportunity to call witnesses, it does not

---

[6] R.C.G.O. 70.121 does not include an express grant of subpoena power to the administrative tribunal.  *See Beachland Ents., Inc. v. City of Cleveland Bd. of Review*, 8th Dist. Cuyahoga No. 99770, 2013-Ohio-5585, ¶ 58-59 (concluding that an administrative tribunal lacks subpoena power in the absence of an express delegation).

[7] An administrative tribunal qualifies as a quasi-judicial proceeding when it requires notice, a hearing and the opportunity to introduce evidence through the testimony of witnesses; subpoena power is not required.  *See*, *e.g.*, *Beachland Ents., Inc. v. City of Cleveland Bd. of Review*, 8th Dist. Cuyahoga No. 99770, 2013-Ohio-5585, ¶ 47, citing *M.J. Kelley Co. v. City of Cleveland*, 32 Ohio St.2d 150, 290 N.E.2d 562 (1972).  Bearing in mind that due process rules are intended to prevent only "the mistaken or unjustified deprivation" of property, Appellants' concern about the reliability of the automatic enforcement equipment might be largely unfounded.  *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).  They opine that "[t]his is not [merely] an academic concern" because "[n]ews reports from other cities have suggested that there are significant problems with some * * * automated speed enforcement system[s]," pointing to an audit of a system in use in Baltimore, Maryland that "revealed * * * an error rate of more than 10 percent."  Appellants' Br. 22.  Were the same true of the systems to which Appellants object in the instant appeal, that would mean that the systems have an accuracy rate of nearly 90 percent.  This represents a substantially lower tolerance for error than the preponderance-of-the-evidence standard commonly applicable in civil matters.

matter when this opportunity occurs in order to preserve [the defendant]'s due process rights"), citing *City of Cleveland v. Posner*, 193 Ohio App.3d 211, 2011-Ohio-1370, 951 N.E.2d 476, ¶ 30-40.

{¶ 19} The third *Mathews* factor is the government's interest, "including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335. Nominally, at least, the ordinance is an exercise of the city's police powers intended to promote traffic safety. Compared to the administrative hearing process as presently constituted in the ordinance, additional procedural safeguards, such as vesting the tribunal with subpoena power and granting defendants the right to engage in discovery, would certainly result in a dramatic increase in the city's costs and administrative burdens. For example, as the Southern District of Ohio found in a similar case, the "fiscal and administrative burdens of requiring police officers, or others who could testify about the accuracy of the equipment used, to attend each administrative hearing would eliminate any efficiencies that the civil enforcement proceedings were designed to achieve." *Kuczak*, 2016 WL 4987170, *13; *see also Balaban v. City of Cleveland*, N.D. Ohio No. 1:07-cv-1366, 2010 WL 481283, *7 (Feb. 5, 2010). We find likewise that the increased fiscal and administrative burdens would outweigh the potential benefit of enhanced procedural due process protections.

{¶ 20} Accordingly, Appellants' arguments concerning use of hearsay evidence and lack of discovery and subpoena power are unavailing. The ordinance affords the recipient of a notice of liability with a reasonable opportunity to present a defense based on the most likely grounds, even if a recipient seeking to prove an equipment malfunction would, as a practical matter, have little choice other than to bring an administrative appeal

under R.C. Chapter 2506.

{¶ 21} The balance of the purported constitutional infirmities with which Appellants charge the ordinance are unavailing, as well. Appellants argue that the ordinance unfairly restricts the evidence that an owner of a vehicle may present in support of an affirmative defense. Their complaint in this respect is that "a person who receives a notice of violation and who claims not to have been driving the car [at the time of the violation] is not permitted * * * merely [to] convince the hearing officer that [another person] was * * * the driver." Appellants' Br. 23. Yet, the ordinance effectively gives a defendant in this position a choice: accept liability for the third party's use of the car, or identify the responsible third party. This would not seem to violate due process or upset traditional notions of fair play. *See, e.g., Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir.2009) (affirming the constitutionality of this approach under a similar Chicago ordinance).

{¶ 22} Further, Appellants contend that married defendants who receive notices of liability for violations committed by their spouses must either pay penalties for violations they did not commit, or implicate their spouses. *See* R.C.G.O. 70.121(C)(2). Appellants describe this Scylla and Charybdis as an abrogation of R.C. 2317.02(D), under which a spouse "shall not testify" about "any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness."

{¶ 23} The difficult choice thus foisted upon married defendants does not render the ordinance unconstitutional on its face. Assuming, without finding, that the ordinance might abrogate spousal privilege in some cases, it would necessarily do so only in those

cases in which one spouse is driving with the other in the car. Irrespective of whether the ordinance might offend spousal privilege in certain circumstances, Appellants have lodged a facial challenge to the ordinance, and to prevail, they must show that the ordinance cannot be applied constitutionally in any circumstances. (Citation omitted.) *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. The ordinance would not, on its face, necessarily do so in every instance.

{¶ 24} Appellants' remaining argument against the ordinance is that the bond requirement in R.C.G.O. 70.121(E)(1)(c) denies due process to indigent defendants. Certainly, this requirement creates additional hurdles for defendants with limited financial means, and by extension, it could discourage such defendants from requesting administrative hearings to contest notices of liability. Nevertheless, the rectification of economic disparities of this kind is not the purpose of procedural due process protections. The U.S. Supreme Court, for example, has held that "the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent [person] who is subject to a child support order, even if that [person] faces incarceration" for up to one year. *Turner v. Roger*s, 564 U.S. 431, 448, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011). Here, far less important interests are at stake, supporting the conclusion that procedural due process does not require that the ordinance permit an indigent defendant to obtain a waiver of the bond requirement. Furthermore, assuming without finding that the bond requirement is unconstitutional with respect to indigent defendants, the ordinance could still be applied constitutionally with respect to non-indigent defendants. Appellants' facial challenge therefore cannot succeed on this basis.

{¶ 25} Evaluated pursuant to the *Mathews* factors, the ordinance provides a

situationally appropriate level of procedural due process protection. Consequently, Appellants have not shown that the administrative procedures established in the ordinance are constitutionally insufficient. Evaluated pursuant to the rational-basis test, the result is the same.

{¶ 26} The ordinance bears a real and substantial relation to public safety and implements a streamlined, low-cost system of traffic enforcement. Although it considerably restricts the defenses and evidence available to recipients of notices of liability, administrative costs in the absence of these restrictions would defeat the purpose of the system. The design of the ordinance, then, is neither unreasonable nor arbitrary, and for all of the foregoing reasons, we hold that the ordinance is not constitutionally invalid on its face. *Wymsylo*, 2012-Ohio-2187, ¶ 21; *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 274, 503 N.E.2d 717 (1986), quoting *Benjamin v. City of Columbus*, 167 Ohio St. 103, 146 N.E.2d 854 (1957), paragraph five of the syllabus.

## 2. TCO 313.11 and 333.09, and WCCO 72.130

{¶ 27} With respect to the Dayton ordinance, the Trotwood and West Carrollton ordinances differ primarily in terms of maximum possible penalty. Under the Trotwood ordinances, the amount of the penalty is $85.00, though a further penalty of $50.00 (for a maximum total of $135.00) is assessed when the recipient of a notice of violation fails to pay, submit proof that another person was driving, or request an administrative hearing within 21 days of the notice date. *See* TCO 313.11(d)(1), (e) and 333.09(d)(1), (e) Under the West Carrollton ordinance, the maximum penalty is $100.00. WCCO 72.130(D)(1)-(2).

{¶ 28} The Dayton ordinance also differs from the West Carrollton ordinance

inasmuch as it states that a "certified copy of [a] notice of liability * * * shall be prima facie evidence of the facts contained therein and shall be admissible in a proceeding alleging a violation," whereas the analogous provision of the West Carrollton ordinance states that "[the fact that a vehicle is registered in the name of the person to whom a notice of violation is issued will be deemed] prima facie evidence that [that person] was operating the vehicle at the time of the offense." R.C.G.O. 70.121(C)(4); WCCO 72.130(C)(3).

{¶ 29} The Trotwood and West Carrollton ordinances do not otherwise differ substantively from the Dayton ordinance. Therefore, we hold that the Trotwood and West Carrollton ordinances are not facially unconstitutional pursuant to Article I, Section 16 of the Ohio Constitution.

### 3. Procedural Questions

{¶ 30} In Case Nos. 2014 CV 01713 and 2014 CV 03292, the trial court entered judgment in favor of Appellees under Civ.R. 56, and in Case No. 2014 CV 03294, the trial court likewise entered judgment in favor of Appellee, RedFlex Traffic Systems, Inc. Summary judgment is appropriate pursuant to Rule 56 of the Ohio Rules of Civil Procedure when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can come to only one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The movant bears the initial burden of showing that no genuine issues of material fact exist. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶ 31} In order to meet this initial burden, the movant must identify those portions

of the record properly before the court pursuant to Civ.R. 56(C) that demonstrate the absence of any genuine issues of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant provides the court with evidence supporting its claim that no genuine issues of material fact exist, then the non-moving party bears the reciprocal burden to establish, as set forth in Civ.R. 56(E), specific facts showing genuine issues for trial. *Id.* at 293. The non-moving party "may not rest upon the mere allegations or denials of [the] pleading[s], but must set forth specific facts showing there is [at least one] genuine issue for trial" to satisfy this reciprocal burden. *Chaney v. Clark County Agric. Soc.*, 90 Ohio App.3d 421, 424, 629 N.E.2d 513 (2d Dist. 1993), citing Civ.R. 56(E), and *Jackson v. Alert Fire & Safety Equip.*, 58 Ohio St.3d 48, 51, 567 N.E.2d 1027 (1991).

{¶ 32} The key to summary judgment is that no genuine issue as to any material fact is presented for trial. Whether a fact is "material" depends on the substantive law of the claim being litigated. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993). An issue of material fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 741, 607 N.E.2d 1140 (8th Dist.1992). If a genuine issue of material fact exists, then summary judgment must, of course, be denied.

{¶ 33} In Case No. 2014 CV 03294, the court sustained the motion of Appellees, the City of Trotwood and Quincy Pope, Sr., for judgment on the pleadings. Civ. R. 12(C) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A trial court's evaluation of a motion

for judgment on the pleadings " 'is restricted solely to the allegations in the pleadings and any writings attached to the complaint.' " *Inskeep v. Burton*, 2d Dist. Champaign No. 2007 CA 11, 2008-Ohio-1982, ¶ 7, quoting *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165, 297 N.E.2d 113 (1973). On consideration of a motion under Civ.R. 12(C), the non-moving party "is entitled to have all the material allegations in [the] complaint, with all reasonable inferences drawn, construed in [its] favor as true." *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99, 616 N.E.2d 519 (8th Dist. 1992), citing *Fischer v. Morales*, 38 Ohio App.3d 110, 112, 526 N.E.2d 1098 (10th Dist. 1987).

{¶ 34} A motion for judgment on the pleadings can be "characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted," the purpose of such a motion being to resolve questions of law, as opposed to questions of fact. *Whaley v. Franklin County Bd. of Comm'rs*, 92 Ohio St.3d 574, 581, 752 N.E.2d 267 (2001); *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). Judgment on the pleadings "may be granted only when no material factual issues exist, and the movant is entitled to * * * judgment as a matter of law." (Citations omitted). *Burnside v. Leimbach*, 71 Ohio App.3d 399, 403, 594 N.E.2d 60 (10th Dist. 1991). A material fact is a fact that, "under the applicable substantive law," would "affect the outcome of the suit." (Citations omitted.) *Wood v. Dorcas*, 142 Ohio App.3d 783, 787, 757 N.E.2d 17 (6th Dist. 2001) (discussing meaning of term "material fact" in context of motion for summary judgment).

{¶ 35} A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6), "is [a] procedural [motion that] tests the sufficiency of [a] complaint." *State ex rel. Hanson v. Guernsey County Bd. of Comm'rs*, 65 Ohio

St.3d 545, 548, 605 N.E.2d 378 (1992). When a court reviews a motion to dismiss, it "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988) (citations omitted). The movant "may not rely on allegations or evidence outside the complaint." *Hanson*, 65 Ohio St.3d at 548.

{¶ 36} For a "trial court to dismiss a complaint under Civ.R. 12(B)(6) * * *, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the [claim or claims in the complaint] that would entitle the plaintiff to the relief sought." *Ohio Bureau of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12, citing *O'Brien v. Univ. Cmty. Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975), and *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254; *see also Sacksteder v. Senney*, 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶¶ 35-46 (holding that traditional standard of review applies to motions to dismiss under Ohio law despite recent cases suggesting application of a "plausibility test" in federal cases). The standard for dismissal under Civ.R. 12(B)(6) is consistent with Civ.R. 8(A), which requires that a complaint "contain * * * a short and plain statement of the claim [or claims] showing that the [plaintiff] is entitled to relief." *See also City of Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29 (noting that Ohio "is a notice-pleading state" and that "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity"). To survive a motion to dismiss, in other words, a plaintiff need not provide in a complaint "every fact he or she intends to prove; such facts may not be available until after discovery" has been exchanged. *Hanson*, 65 Ohio St. 3d at 549.

{¶ 37} The "material facts are uncontroverted" in these cases. Appellants' Br. 9. Because we agree with the trial court's conclusions of law regarding the constitutionality of the Ordinances, we find that the court did not err by sustaining Appellees' motions for summary judgment and judgment on the pleadings.

## B. Standing and Exhaustion of Administrative Remedies

{¶ 38} As a practical matter, our ruling on the constitutional validity of the Ordinances all but obviates the need to address the argument that some of the appellants lack standing to appeal from the trial court's decision. We agree, however, with the trial court's determination that those who received a notice of liability have standing to appeal, regardless of whether they paid or did not pay their civil penalties before commencing suit in the trial court. *See, e.g., San Allen, Inc. v. Buehrer*, 2014-Ohio-2071, 11 N.E.3d 739, ¶ 57-58 (8th Dist.).

## III. Appellants' Second Assignment of Error

{¶ 39} For their second assignment of error, Appellants contend that:

THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON APPELLANTS' UNJUST ENRICHMENT CLAIMS.

{¶ 40} Appellants base their claim of unjust enrichment on the argument that the Ordinances are facially unconstitutional. Appellants' Br. 43. Because we have held that the Ordinances are not facially unconstitutional, we find that Appellants' second assignment of error is moot.

## IV. Conclusion

{¶ 41} The Ordinances bear a rational relationship to a legitimate governmental

function, and they are neither unreasonable nor arbitrary. They provide an appropriate level of procedural due process guarantees in light of their purpose, the private interests at stake and the administrative and fiscal burdens that additional due process protections would impose on cities. Therefore, we overrule Appellants' assignments of error and affirm the trial court's decision of August 8, 2016.

. . . . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., concurring:

{¶ 42} I would find that there are significant legal concerns involving some of the process provided, or not provided, to certain individuals who wish to contest a "notice of civil liability." However, on this record, I concur that the trial court did not err in granting the motions for summary judgment and judgment on the pleadings and finding that the ordinances in question are not facially unconstitutional.

. . . . . . . . . .

Copies mailed to:

Joshua A. Engel
Michael K. Allen
Paul M. DeMarco
Thomas J. Manning
John C. Musto
Dawn M. Frick
David M. Shaver
Jeffrey C. Turner
Edward J. Dowd
Joshua R. Schierloh
Lori E. Denlinger
Quintin F. Lindsmith

James P. Schuck
Sommer L. Sheely
Stephen M. McHugh
Amelia N. Blankenship
Christopher R. Conard
Neil F. Freund
Kelly M. Schroeder
Hon. Michael W. Krumholtz